UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

FREDDIE LOUIS DILLARD,

    Plaintiff,

Civil No. 09-1564 (JNE/JJG)

v.

**REPORT AND RECOMMENDATION**

R.S. EDEN ASHLAND, and
CHRISTINA BONKOWSKE,

    Defendants.

Plaintiff, an inmate at the Minnesota Correctional Facility at Lino Lakes, Minnesota, has filed an amended complaint, (Docket No. 13), seeking relief under 42 U.S.C. § 1983 for alleged violations of his federal constitutional rights.[1] This case has been assigned to the undersigned Magistrate Judge of the District Court for initial screening pursuant to 28 U.S.C. § 1915A, and for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1.[2] For the

---

[1] Plaintiff's original complaint was defective in several critical respects, and he sought leave to amend. By order dated October 6, 2009, (Docket No. 12), Plaintiff was granted leave to file an amended complaint, and he was given explicit instructions on how to replead. Plaintiff filed his amended complaint on October 29, 2009, and that is now the operative pleading in this case.

[2] When Plaintiff commenced this action, he did not tender the $350.00 filing fee required by 28 U.S.C. § 1914(a), but he instead applied for leave to proceed in forma pauperis, ("IFP"), pursuant to 28 U.S.C. § 1915(a). (Docket No. 2.) Because Plaintiff is a prisoner, he was ordered to pay an initial partial filing fee, pursuant to 28 U.S.C. § 1915(b). Plaintiff did not pay his initial partial filing fee as ordered, so the Court recommended that this action be summarily dismissed without prejudice. (See Report and Recommendation dated August 21, 2009; [Docket No. 6].) Shortly thereafter, Plaintiff did pay his fee, so the District Court Judge declined to dismiss the case, and instead remanded the case to this Court with directions to review Plaintiff's complaint pursuant to 28 U.S.C. § 1915A. (See Order dated September 14, 2009; [Docket No. 11].)

reasons discussed below, the Court finds that Plaintiff's complaint fails to state a claim on which relief can be granted, and that this action should therefore be dismissed pursuant to § 1915A(b)(1).

## I. BACKGROUND

Plaintiff's amended complaint does not present a readily comprehensible description of the factual background of this case. As far as the Court can tell, Plaintiff was released from a Minnesota state prison facility sometime earlier this year.[3] It appears that Plaintiff had not completed the full term of his sentence, but was released on "Intensive Supervised Release," ("ISR"), pursuant to Minn. Stat. § 244.05, subd. 6. (See Amended Complaint, Attachment, p. 3, ¶ V.) He has since been returned to prison, presumably because he was found to have violated the terms and conditions of his ISR.

Plaintiff is presently attempting to sue two Defendants identified as "R.S. Eden Ashland" and Christine Bonkowske. Giving Plaintiff's complaint the benefit of a very liberal construction, the Court finds that Defendant R.S. Eden Ashland must be a private organization that provides "half-way houses" and related services for prisoners who have been granted supervised release by the Minnesota Department of Corrections, ("DOC"). Defendant Bonkowske is referred to as a "case manager,"

---

[3] A 2001 decision by the Minnesota Court of Appeals shows that Petitioner was "arrested and charged after driving a 15 year old girl to a hotel, giving her $200, asking her to be a prostitute, and attempting to have sex with her." State v. Dillard, No. C7-00-2168, (Minn. App. 2001), 2001 WL 1491295 at *1, rev. denied, Jan. 29, 2002. A jury later found him guilty of "solicitation to practice prostitution," "engaging in prostitution with a child," and "kidnapping," and he received a 158-month sentence. Id.

and she presumably is an employee of R.S. Eden Ashland. Plaintiff alleges that Defendants "made an agreement" with the DOC "to harbor, detain, and hold" Plaintiff at 532 Ashland Avenue, St. Paul, Minnesota, which apparently is a "half-way house" type of facility. (Id., p. 2, ¶ I.)

The amended complaint does not describe the nature or purpose of the alleged agreement between Defendants and the DOC. It is alleged, however, that an agent of the DOC "produc[ed] instruction on how to detain" Plaintiff. (Id., ¶ II.) This suggests that Defendants were assigned certain responsibilities for overseeing and enforcing the terms of Plaintiff's ISR. The complaint also suggests that Defendants were somehow involved in the suspension of Plaintiff's ISR, and his return to prison. (See id., p. 3, ¶ V.)

Plaintiff's complaint includes several vague accusations against Defendants, which are not supported by any specific factual allegations. Plaintiff broadly claims, for example, that Defendant Bonkowske "used her power of trust to intimidate, harass and oppress" Plaintiff; she "performed a minesterial [sic] function of a judiciary branch, finding [Plaintiff] guilty a [sic] sentencing him to 10 day detention and hard labor;" she "terrorized and tortured him by employing a persistent course of conduct to produce mental and emotional distress;" and she "used her position of trust in a manipulative fashion to discharge... [Plaintiff's ISR] as an auxilliary [sic] weapon to torture and terrorize" Plaintiff. (Amended Complaint, p. 3, § IV, "Statement of Claim;" Attachment, p. 3, ¶s IV, V.)

There are only two specific factual allegations in Plaintiff's amended

complaint. First, Plaintiff alleges that Defendant Bonkowske "placed restrictive restraints on [Plaintiff's] liberties, informing him who he could see, who [he] could not see, placing a curfew on [Plaintiff], placing him on house arrest, instructing him to call where ever he went upon arrival, and departure, random and daily searches of his person, and effects." (Amended Complaint, Attachment, p. 2, ¶ II.) In addition, Defendant Bonkowske allegedly found Plaintiff "guilty for being at the law library at William Mitchell School of Law," and informed him that he could not return to the library until he found a job and a place to live. (Id.)

Based on these vague accusations, and meager factual allegations, Plaintiff is attempting to bring a § 1983 civil rights action against the named Defendants. He claims that while he was on ISR, he "retained the [same] rights as every other citizen of the City of St. Paul," and Defendants deprived him of those rights by their "intentional unwarranted disregard for [Plaintiff's] life, liberty and property." (Id., p. 4.) Plaintiff is seeking a judgment against Defendants in the amount of $50,000.00, plus "injunctive relief to prevent the defendant's from using the [Plaintiff's] image, name [and] person." (Amended Complaint, p. 3, § V, "Relief.")

## II. DISCUSSION

Plaintiff is a prisoner who is seeking redress from parties who are alleged to be "instrumentalitie[s] of the state." (Amended Complaint, Attachment, p. 2, ¶ III.) Therefore, Plaintiff's complaint must undergo preliminary "screening" pursuant to 28 U.S.C. § 1915A, which is part of the Prison Litigation Reform Act of 1995, ("PLRA"). Section 1915A requires federal courts to review the pleadings in every

civil action brought by a prisoner against government employees and entities "before docketing, if feasible or, in any event, as soon as practicable after docketing." 28 U.S.C. § 1915A(a). If a prisoner's complaint fails to state a cause of action on which relief can be granted, the case must be summarily dismissed pursuant to 28 U.S.C. § 1915A(b)(1).[4]

To state an actionable claim for relief, a complaint must allege a set of historical facts, which, if proven true, would entitle the plaintiff to a judgment against the defendant(s) under some cognizable legal theory. While federal courts must "view pro se pleadings liberally, such pleadings may not be merely conclusory: the complaint must allege facts, which if true, state a claim as a matter of law." Martin v. Aubuchon, 623 F.2d 1282, 1286 (8th Cir. 1980) (emphasis added). See also, Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985) ('[a]lthough it is to be liberally construed, a pro se complaint must contain specific facts supporting its conclusions"); Stone v. Harry, 364 F.3d 912, 915 (8th Cir. 2004) (federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint").

To state an actionable civil rights claim, as Plaintiff is attempting to do here, a complaint must allege facts showing that each named defendant was personally

---

[4] Plaintiff cannot sue Defendants under 42 U.S.C. § 1983 unless they are "state actors." Thus, the Court finds that Defendants must be viewed as governmental parties for purposes of § 1915A. However, even if the Defendants in this case are state actors for § 1983 purposes, but not governmental parties for § 1915A purposes, Plaintiff's pleading is still subject to sua sponte review, and it can still properly be dismissed for failure to state an actionable claim for relief, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

involved in some alleged violation of the claimant's federal constitutional rights. Beck v. LaFleur, 257 F.3d 764, 766 (8th Cir. 2001) (to state an actionable civil rights claim, a complaint must describe what, specifically, each named defendant did, or failed to do, that allegedly violated the claimant's constitutional rights); Ellis v. Norris, 179 F.3d 1078, 1079 (8th Cir. 1999) (civil rights claimants must plead facts showing the defendant's personal involvement in alleged constitutional wrongdoing). See also Madewell v. Roberts, 909 F.2d 1203, 1208 (8th Cir. 1990) (liability in a civil rights action "requires a causal link to, and direct responsibility for, the deprivation of rights" protected by the Constitution); Speed v. Ramsey County, 954 F. Supp. 1392, 1397 (D.Minn. 1997) (same).

In this case, Plaintiff has not pleaded an actionable civil rights claim, because he has not alleged any facts, which, if proven true, would show that Defendants violated his federal constitutional rights. As noted above, Plaintiff's amended complaint includes only two specific factual allegations: (1) Defendant Bonkowske allegedly placed certain "restrictive restraints" on Plaintiff during his ISR, and (2) Defendant Bonkowske allegedly prohibited Plaintiff from visiting the law library at William Mitchell College of Law until he found a job and a place to live. Neither of these allegations can support an actionable § 1983 claim.[5]

---

[5] The Court notes that neither of Plaintiff's two factual allegations includes any reference to Defendant R.S. Eden Ashland. This suggests that R.S. Eden Ashland is being sued simply because it is (evidently) the employer of Defendant Bonkowske. In other words, it appears that Plaintiff is attempting to hold Defendant R.S. Eden Ashland vicariously liable for the alleged constitutional misconduct of its employee, Defendant Bonkowske. However, it is well settled that the doctrine of respondeat superior is not applicable to § 1983 civil rights claims. Monell v. Department of Social Services, 436 U.S.

First, Defendants did <u>not</u> violate Plaintiff's federal constitutional rights by imposing the "restrictive restraints" described in the amended complaint – i.e., the curfew, the visitation restrictions, the reporting requirements, and the searches of Plaintiff's person and property. Plaintiff claims that while he was on ISR, he enjoyed all of the same rights as other citizens, including the right to come and go as he pleased without any restrictions or self-reporting responsibilities, and the right to privacy with respect to his person and property. This claim, however, is plainly invalid.

When Plaintiff was tried, convicted, and sentenced for violating Minnesota's penal code, (<u>see</u> n. 3, <u>supra</u>), he was deprived of certain rights, privileges and "liberty interests" enjoyed by other citizens. Those deprivations were legal and constitutional, because Plaintiff's state court criminal case provided him the full measure of due process, including a jury trial, the right to call witnesses, and the right to counsel. He was convicted, sentenced, and deprived of certain "liberty interests" only after being afforded all of the procedural protections required by the Constitution.

Plaintiff's term of ISR is part of the sentence that he received in his state criminal case, and under Minnesota law, the DOC is charged with setting appropriate terms and conditions for Plaintiff's ISR. Minn.Stat. § 244.05, subd. 3. <u>See</u> <u>also</u> <u>Aziz v. State</u>, No. A07-1219 (Minn.App. 2008), 2008 WL 2106833 (unpublished opinion) at *1 (noting "the DOC's clear statutory power to impose such conditions"), citing

---

658, 694 (1978).

Kachina v. State, 744 N.W.2d 407, 409 (Minn.App. 2008), State v. Schwartz, 628 N.W.2d 134, 140-41 (Minn. 2001).

In this case, it appears on the face of the amended complaint that the DOC set the terms and conditions of Plaintiff's ISR, as required by Minnesota law. (Amended Complaint, Attachment, p. 2, ¶ II.) There is nothing in Plaintiff's pleading which suggests that any of those terms and conditions were inappropriate in any respect. To the contrary, the "restrictive restraints" described in the amended complaint are fully consistent with applicable Minnesota law. Minn.Stat. § 244.05, subd. 6 expressly states that the terms and conditions imposed by the DOC for a prisoner's ISR may include "unannounced searches of the inmate's person, vehicle, or premises by an intensive supervision agent; compliance with court-ordered restitution, if any; random drug testing; house arrest; daily curfews; frequent face-to-face contacts with an assigned intensive supervision agent; work, education, or treatment requirements; and electronic surveillance."

Plaintiff's ISR may have afforded him more freedoms than he enjoyed in prison, but it did <u>not</u> guarantee him all of the rights and freedoms of citizens who are not currently serving a court-imposed sentence for a criminal conviction. "A person on supervised release remains in the state's legal custody and is subject to re-incarceration for breach of a condition of release." Schwartz, 628 N.W.2d at 139.

In sum, the "restrictive restraints" imposed on Plaintiff as part of his ISR were actually part of his sentence, and that sentence was imposed in a criminal case in which Plaintiff was afforded the full measure of due process protections. Therefore,

the "restrictive restraints" cited in Plaintiff's amended complaint did not violate his federal constitutional rights.

The Court also finds that Plaintiff has not stated an actionable civil rights claim, simply because he was not allowed to use the law library at the William Mitchell College at Law. Prisoners do have a limited constitutional right of "access to the courts," which arguably includes a right of access to legal resources. However, even if that right extends to prisoners on ISR, and even if it includes a right to visit private law libraries, (which seems to be a very dubious assumption), Plaintiff's amended complaint still fails to state an actionable "access to the courts" claim.

In Lewis v. Casey, 518 U.S. 343, 349 (1996), the Supreme Court held that a prisoner lacks standing to bring an access to the courts claim, unless he can show some "actual injury." See Klinger v. Department of Corrections, 107 F.3d 609, 617 (8th Cir. 1997) ("[i]n Lewis v. Casey, the Supreme Court held, based on principles of standing, that actual injury must be proven in order to prevail on an access-to-courts claim"). Thus, an inmate cannot bring an access to the courts claim unless he pleads, (and ultimately proves), that he has been deprived of some specific opportunity to defend himself, or advance a viable legal claim, in some particular action. Lewis, 518 U.S. at 351; Sabers v. Delano, 100 F.3d 82, 84 (8th Cir. 1996) (per curiam). The inmate must identify some specific injury resulting from the alleged lost opportunity to litigate. Speculative injuries – i.e., injuries that might occur, or could have occurred – are not sufficient. Hartsfield v. Nichols, 511 F.3d 826, 833 (8th Cir. 2008).

A prisoner who claims that he has been denied his constitutional right of access to the courts must allege facts showing some specific harm to a particular legal right, which is directly attributable to inadequate access to legal resources. "Plaintiffs must demonstrate, for example, that the inadequacy" of access to legal resources "caused such actual injury as the late filing of a court document or the dismissal of an otherwise meritorious claim." Pilgrim v. Littlefield, 92 F.3d 413, 416 (6th Cir. 1996).

Here, Plaintiff has not pleaded an actionable claim for denial of access to the courts, because his amended complaint does not identify any specific occasion when he actually lost some clearly identified substantive legal right as a direct result of the alleged restrictions on his access to legal resources. The amended complaint includes no factual allegations showing that Plaintiff has actually lost any sustainable claim or defense in a pending or contemplated court proceeding, which would have been preserved if he had been given access to a law library. Therefore, Plaintiff has failed to plead an actionable claim for denial of access to the courts. See Sabers, 100 F.3d at 84 (access-to-courts claim was properly dismissed where prisoner "offered no facts" showing that alleged lack of legal resources actually "prejudiced her in a legal case").

### III. CONCLUSION

For the reasons discussed above, the Court concludes that Plaintiff's amended complaint fails to state a cause of action on which relief can be granted. Therefore, this case must be summarily dismissed pursuant to 28 U.S.C.

§ 1915A(b), and Plaintiff's application for leave to proceed in forma pauperis, (Docket No. 2), must be denied. See 28 U.S.C. § 1915(e)(2)(B)(ii).

Notwithstanding the dismissal of this action, Plaintiff will remain liable for the unpaid balance of the $350.00 filing fee.[6] To date, he has paid only $11.17, so he still owes $338.83. Prison officials will have to deduct that amount from Plaintiff's institutional trust account, and pay it to the Clerk of Court, in the manner prescribed by 28 U.S.C. § 1915(b)(2). Finally, because Plaintiff has failed to plead an actionable claim for relief, the dismissal of this action should count as a "strike" against him for purposes of 28 U.S.C. § 1915(g).

## IV. RECOMMENDATION

Based upon the above, and upon all the files, records, and proceedings herein,

**IT IS RECOMMENDED** that:

1. Plaintiff's application to proceed in forma pauperis, (Docket No. 2), be **DENIED**;

---

[6] Under the PLRA, prisoners may be excused from pre-paying the full amount of the applicable filing fee before filing an action. However, 28 U.S.C. § 1915(b) clearly states that prisoners "shall be required to pay the full amount of the filing fee." In other words, prisoners are permitted to file actions without paying the full filing fee in advance, but they still remain liable for the fee. Ashley v. Dilworth, 147 F.3d 715, 716 (8th Cir. 1998) ("[t]he purpose of the [PLRA] was to require all prisoner-litigants to pay filing fees in full, with the only issue being whether the inmate pays the entire filing fee at the initiation of the proceeding or in installments over a period of time"). Nothing in the PLRA suggests that the dismissal of a prisoner's action would extinguish the ultimate obligation to pay the filing fee. See In re Tyler, 110 F.3d 528, 529-30 (8th Cir. 1997) ("the PLRA makes prisoners responsible for their filing fees the moment the prisoner brings a civil action or files an appeal").

2. This action be **SUMMARILY DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1), and 28 U.S.C. § 1915(e)(2)(B)(ii);

3. Plaintiff be required to pay the unpaid balance of the Court filing fee, namely $338.83, in accordance with 28 U.S.C. § 1915(b)(2); and

4. For purposes of 28 U.S.C. § 1915(g), this action be dismissed "on the grounds that it is frivolous, malicious, or fails to state a claim on which relief may be granted."


Dated: December 8, 2009         s/ *Jeanne J. Graham*
                                JEANNE J. GRAHAM
                                United States Magistrate Judge


**NOTICE**

Pursuant to D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by **December 22, 2009**. A party may respond to the objections within ten days after service thereof. Any objections or responses filed under this rule shall not exceed 3,500 words. A District Judge shall make a de novo determination of those portions to which objection is made. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the United States Court of Appeals for the Eighth Circuit.